# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JERRY L. MCCABE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 08-CV-3091 |
| | ) | |
| LARRY J. PHILLIPS, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, is detained in the Rushville Treatment and Detention Center.  On July 13, 2009, Judge Baker allowed Plaintiff to proceed on a due process claim based on the alleged punitive conditions at the facility and on a discrimination claim under the Americans with Disabilities Act.  (7/13/09 text order.)  On August 31, 2011, Judge Baker dismissed Plaintiff's claims under the Americans with Disabilities Act.

Thus, the only claim before the Court is the restrictive, punitive

1

conditions claim, on which Defendants have moved for summary

judgment.  After careful consideration of the parties' submissions, the

Court concludes that the conditions of which Plaintiff complains do not

violate constitutional standards.  Different or better ways might exist to

run the facility, but that is not the constitutional test.  Accordingly,

summary judgment is mandated for Defendants.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A

movant may demonstrate the absence of a material dispute through

specific cites to admissible evidence, or by showing that the nonmovant

"cannot produce admissible evidence to support the [material]  fact."

Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant

may not simply rest on his or her allegations in the complaint, but

instead must point to admissible evidence in the record to show that a

genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526,

529 (7ᵗʰ Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." <u>McAllister v. Price</u>, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. <u>Id.</u>

## FACTS

In 1999, after serving his criminal conviction, Plaintiff was detained in the Rushville Treatment and Detention Center pursuant to a probable cause hearing held under the Illinois Sexually Violent Persons Act, 725 ILCS 207/30. A detainee under this statute is transferred to a facility approved by the Department of Human Services until a trial is held on the petition to detain him. 725 ILCS 207/30(b). Additionally, the

3

transfer is supposed to be to "an appropriate facility for an evaluation as to whether the person is a sexually violent person." 725 ILCS 207/30(c).

According to Plaintiff, he still has not received a trial on whether or not he is a sexually violent person, though nearly 13 years have passed since his initial probable cause hearing. Section 207/35 requires a trial within 120 days of the probable cause hearing, unless Plaintiff consents or good cause is shown. No explanation for the delay is in the record. However, court orders entered in some of Plaintiff's federal habeas actions have concluded that the delay is largely attributable to Plaintiff. McCabe v. Monohan, Appeal No. 07-2996 (7th Cir. 2007, 11/19/07 order affirming dismissal of habeas petition)("The reason McCabe has not yet had a trial is his own dilatory tactics; he has provided no evidence that the state bears any responsibility for the delay."); McCabe v. Budz, 05-CV-014 (S.D. Ill., Judge Stiehl, 12/20/05 order dismissing habeas petition, p. 2, d/e 23)("[A]s petitioner admits, the delay in adjudicating the merits of that case is attributable to petitioner's numerous attempts to challenge his detention under the SVPCA."). The question is

irrelevant as far as this case goes: challenges to the fact of detention

belong in Plaintiff's state commitment proceedings or in a federal habeas

action.

Plaintiff has been housed in DHS detention facilities for sexually

violent persons since 1999, first in Sheridan, then Joliet, and, since 2006,

in Rushville. No effort is made to separate those waiting for their trials

from those already committed.  Instead, residents are assigned to housing

units according to whether they have consented to treatment.  (Williams

Aff. ¶ 21, d/e 80-5.)  A resident generally has access to a dayroom and his

own bedroom, which he typically shares with another resident.  About

20-25 residents' rooms border this day room.  Meals are served in the day

room rather than in the dining room.  Residents were initially permitted

access to a small outdoor patio attached to their unit, but those patios

have been closed for the purported reason of misuse by  some residents.

(McAdory 4/12/11 memo, Def.'s Ex. H, d/e 80-3.)

Plaintiff contends that he is confined to the day room and his

bedroom for 21 to 23 hours every day.  However, his own exhibit shows

that he has daily access to yard and to the gym for a few hours every day.

He can also attend the library, visit the health care unit twice daily for

medication, leave the unit to pick up mail, attend commissary weekly,

and attend occasional special events off the unit.  (Pl.'s Dep. pp. 35, 38,

48, 55; Pl.'s Resp., Description of Daily Activities, d/e 88-2, p. 43.)  Also

offered off-unit are religious services and studies, art group, racquet

sports, team sports, band, and group therapy.  (Pl.'s Resp., Ex. B., Daily

Activity Schedule, d/e 88-2, pp. 40-41.)   Plaintiff has chosen not to

participate in therapy, which would present another opportunity for

movement and interaction.  He refuses to participate in therapy because

doing so would require him to admit that he is sexually violent.  (Pl.'s

Dep. pp. 12, 51-52.)

Since 2000, Plaintiff has been in "responsible A status," which

means that he has no record of behavioral problems.  (Pl.'s Dep. p. 25,

d/e 80-2.)  Plaintiff has not had to wear the "black box" when

transported outside the facility since he was first brought to the facilities

in Sheridan and Joliet.  (Pl.'s Dep. p. 106, d/e 80-3.)  He has never been

in segregation, also known as "close management status," has never been

confined to his room for a "cool down," and has never been removed

from his room by the tactical team.  Id. at pp. 73, 75, 106, 131.

   G.E.D. classes are offered at the facility, but no additional

educational classes are offered, and no useful vocational training is

offered.  Defendant Blaesing avers that, "in the past, the Rushville facility

has offered a greater amount of educational and vocational opportunities;

however, both educational and vocational opportunities have been

diminished in recent years due to the diminishing number [of] staff

members available to provide instruction.  Vocational programs such as

floor care and horticulture have existed in the past, but have been

dropped due to a lack of staff members to offer instruction in those

areas."  (Blaesing Aff. ¶ 6, d/e 80-6.)  While incarcerated in the Illinois

Department of Corrections, Plaintiff earned "three associate's degrees

and a bachelor's of science from an unaccredited university."  (Pl.'s Dep.

p. 15, d/e 80-2 p. 15.)  In June, 2009, Defendant Phillips denied

Plaintiff's request to take a correspondence class for which a personal

computer was needed.  (Phillips' 6/18/09 memo to Plaintiff, Pl.'s Ex. L,

d/e 88-5.)  However, Phillips expressed in his response that Plaintiff

would be permitted to take a correspondence class which required no

computer.  Id.

## ANALYSIS

Plaintiff spends two sections of his argument assailing the legality

of his detention.  (Pl.'s Resp., Arguments I & II, d/e 88-1, pp. 6-15.)

These claims are not proceeding in this case, pursuant to Judge Baker's

order delineating the claims that are proceeding.  In any event, claims

challenging the validity of detention cannot proceed in a 42 U.S.C. §

1983 action until that detention has been invalidated through proper

procedures.  Challenges to the fact of Plaintiff's detention must be made

in Plaintiff's state court proceedings or in a federal habeas action.

DeWalt v. Carter, 224 F.3d 607, 614 (7th Cir. 2000)(challenges to fact

or duration of confinement must be pursued in habeas action, not in an

action under 42 U.S.C. § 1983); Varner v. Monohan, 460 F.3d 861 (7th

Cir. 2006)(example of habeas action by sexually violent person

challenging constitutionality of commitment procedures); *see also*

Sweeney v. Bartow, 612 F.3d 571 (7th Cir. 2010)(Younger abstention

doctrine counseled against federal court interference in ongoing state

commitment proceedings under the Sexually Violent Persons Act); *but*

*see* Gregory-Bey v. Hanks, 332 F.3d 1036, 1038 (7th Cir. 2003)(habeas

corpus action allowed to proceed "due to the inordinate delay and

malfunctioning of the Indiana state court system, through no fault of the

defendant.").  Courts should not sua sponte convert a § 1983 claim into

a habeas claim, because doing so may cause unintended adverse

consequences.  Glaus v. Anderson, 408 F.3d 382 (7th Cir. 2005)("In most

cases, therefore, the district court should evaluate cases as the plaintiffs

label them.").

 Plaintiff's next argument assails the restrictive, prison-like

environment of the facility.  Plaintiff argues that he must be detained in

the "least restrictive environment."  He contends that he actually had

more freedom of movement in prison.  He contends that his environment

should mimic that of a mental health patient involuntarily committed in

9

a state mental health facility.

Plaintiff's restrictive conditions claim must be analyzed in the same manner as a claim by a pretrial detainee. <u>Brown v. Budz</u>, 398 F.3d 904, 910 (7th Cir. 2005)(status of person awaiting trial for civil commitment under the Sexually Violent Persons Act was comparable to pretrial detainee). Detainees like Plaintiff are entitled to humane conditions of confinement. Deprivations, even for pretrial detainees, do not violate constitutional standards unless those deprivations are sufficiently serious—atypical and significant. *See, e.g.,* <u>Miller v. Dobier</u>, 634 F.3d 412, 414-15 (7th Cir. 2011)(no constitutionally protected liberty interest in avoiding the "black box" restraints); <u>Sain v. Wood</u>, 512 F.3d 886, 893-94 (7th Cir. 2008)(sexually violent detainee is entitled to humane conditions—"'adequate food, clothing, shelter, and medical care"); <u>Thielman v. Leean</u>, 282 F.3d 478, 483-84 (7th Cir. 2002)(addition of waist belt and leg chains to handcuffs during transport of detained person did not implicate Constitution.)

Also relevant to the analysis of Plaintiff's restrictive environment

claim is <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315 (1982), a Supreme Court case which addressed the conditions of confinement of an involuntarily committed mentally retarded person.  The <u>Youngberg</u> Court noted that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. at 322. The Supreme Court recognized the committed person's constitutional interests in "safety and freedom from undue restraint." 457 U.S. at 319.  However, the Court also recognized that restrictions on liberty were subject to the legitimate concerns of the facility.  457 U.S. at 320; <u>Allison v. Snyder</u>, 332 F.3d 1076, 1079 (7th Cir. 2003)(persons confined as sexually dangerous persons were like pretrial detainees and could be "subjected to conditions that advance goals . . . such as preventing escape and assuring the safety of others, even though they may not be punished.").

 <u>Youngberg</u> also concluded that involuntarily committed individuals were entitled to the exercise of professional judgment by the "appropriate

professional." 457 U.S. at 321, 324. The Seventh Circuit Court of

Appeals has explained:

> Detainees are entitled to "the exercise of professional
> judgment as to the needs of residents". . . . ; if professional
> judgment leads to the conclusion that restraints are necessary
> for the well-being of the detainee (or others), then the
> Constitution permits those devices. . . . . <u>Seling v. Young</u>, 531
> U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001),
> generalizes the proposition this way: "due process requires
> that the conditions and duration of confinement ... bear some
> reasonable relation to the purpose for which persons are
> committed."

<u>West v. Schwebke</u>, 333 F.3d 745 (7th Cir. 2003). However, a "justified

security policy is not . . . properly viewed as a treatment program that

must be supported by an exercise of professional judgment[,]" by health

professionals even if the policy "limits opportunities for treatment." <u>Lane

v. Williams</u>, 689 F.3d 879, 883 (7th Cir. 2012). The Seventh Circuit in

<u>Lane</u> seemed to interpret <u>Youngberg's</u> professional judgment rule as

limited to claims regarding a plaintiff's treatment, with the "appropriate

professional" being a health professional. 689 F.3d at 883.

Applying these standards, the Court must conclude that the

restrictions challenged by Plaintiff are justified by legitimate security

concerns.  The professional judgment of clinical staff was not constitutionally required in determining the limits of residents' freedom of movement within the facility and other security decisions like restraints on writs, use of the tactical team, and monitoring by guards. Lane, 689 F.3d at 883.

Plaintiff's primary complaint is that he is confined to his unit for much of the day, which consists of a dayroom and bedrooms housing 20-25 residents.  He wants to move more freely about the facility, within reason, and to interact with more residents.  Given his good behavioral record, perhaps he should be allowed to do so.  However, the Constitution mandates the minimum standard for a detainee's conditions of confinement, not the ideal conditions.  Plaintiff's movement is not restricted below constitutional standards: he may attend yard and gym daily, go to the library and commissary, attend therapy, and attend programs and events off the unit.  Plaintiff has never been subjected to the black box policy, tactical team, segregation, or other disciplinary measures at Rushville, which, in any event, are not per se

13

unconstitutional.  *See, e.g.,* Miller, 634 F.3d at 414-15 (sexually violent detainee has no constitutionally protected liberty interest in avoiding the "black box" restraints or in avoiding close status, which involved earlier curfew time, reduced family visits, and denial of yard, library, and exercise room).

Recently, the Seventh Circuit in Lane v. Williams, 689 F.3d 879 (7th Cir. 2012), addressed these restrictions, though in the context of the First Amendment right to association.  The plaintiffs in Lane, housed in the Rushville Treatment and Detention Center like Plaintiff, challenged the limitations on their interactions with residents on other pods and units.  The plaintiffs' expert opined that those limitations were counter-therapeutic to rehabilitation, preventing the plaintiffs from developing necessary interactive skills.  The plaintiffs argued that the clinical staff, not just the security staff, had to exercise professional judgment in setting the limitations because those limitations impacted treatment and rehabilitation.

The Seventh Circuit in Lane held that the limits on interaction with

other residents did not violate the residents' associational rights or their rights to have professional judgment exercised by clinical professionals in treatment decisions, reasoning that <u>Youngberg</u> did "not hold that every aspect of civil commitment must be evaluated as a treatment program." 689 F.3d at 883.  The <u>Lane</u> Court further stated that "the plaintiffs in this case wisely do not argue that the limits on interaction among some of the units is intended to inflict punishment, . . . , or is not a legitimate security measure . . . , and understand that they can prevail only if the contested restrictions on association are *treatment* decisions."  <u>Id.</u> at 882 (emphasis in original).

As in <u>Lane</u>, Plaintiff makes no real challenge to the proffered security reasons for limiting movement, and no evidence suggests that the limitations "so interfere with treatment that the conditions . . . no longer 'bear some reasonable relation to the purpose for which persons are committed.'" <u>Id.</u> at 883.  His argument that the therapists are required to add their professional judgment to the decision to limit movement among pods and units is the same argument considered by <u>Lane</u>.

15

Plaintiff cites a Northern Illinois District case, Hargett v. Adams, to support his argument, but Hargett cuts against him.  In Hargett, many of the same conditions were challenged by sexually violent detainees held at the Joliet Treatment and Detention Center.  In Hargett, the plaintiffs' expert testified that the prison-like environment was counter-therapeutic. The Court acknowledged this testimony but concluded:

> Defendants' decisions . . . fall under the purview of reasonable professional judgment in the administration of a hybrid detention and treatment facility. . . . [T]he restrictions of movement, the room and personal searches, use of the black box, use of close management status, and use of intercoms, are not substantial departures from accepted professional judgment and standards, and therefore are constitutionally permissible.  Specifically, . . . . there are legitimate security and institutional concerns underlying these policies that indicate that professional judgment is being properly exercised.

Hargett v. Adams, 2005 WL 399300 * 16 (N.D. Ill., Judge Leinenweber). The Hargett opinion, entered years before Lane, applied the professional judgment standard to security and administrative decisions, with the appropriate professionals being the administrators.  In light of Lane, whether the Seventh Circuit would agree that the professional judgment

16

rule applied to the security decisions in <u>Hargett</u> is unclear.  However, the

debate makes no practical difference in this case.  Both <u>Lane</u> and <u>Hargett</u>

hold that restrictions supported by legitimate security concerns are

constitutional, even if those restrictions indirectly impact treatment.  In

short, the Court does not believe that <u>Hargett</u> helps Plaintiff's argument.

Plaintiff also points to 725 ILCS 207/40(b)(2), which states that

"[t]he Department [of Human Services] shall arrange for control, care

and treatment of the person in the least restrictive manner consistent

with the requirements of the person and in accordance with the court's

commitment order."  Plaintiff argues that the conditions at Rushville are

not the "least restrictive" conditions consistent with safety concerns.

Assuming, arguendo, that this statute creates a private right

enforceable in state court, the right would not be enforceable in federal

court.  <u>Guarjardo-Palma v. Martinson</u>, 622 F.3d 801, 806 (7th Cir.

2010)("[A] violation of state law is not a ground for a federal civil rights

suit."); <u>Allison v. Snyder</u>, 332 F.3d 1076, 1079 (7th Cir. 2003)(The

federal constitution does not "permit a federal court to enforce state laws

directly" or require Illinois to keep its statutory promises).  Nor does this statute create a constitutionally protected liberty interest in the "least restrictive manner" of confinement.  *See, e.g.,* <u>Thielman</u>, 282 F.3d at 481 (sexually violent detainee had no liberty interest in avoiding restraints, even though a Wisconsin statute stated that these detainees had a "'right to the least restrictive conditions necessary.'").

Plaintiff also argues that the equal protection clause entitles him to be housed in the same conditions as a patient under the Mental Health and Disabilities Code.  He challenges the constitutionality of 725 ILCS 207/50(b), which excludes "secure facilities" such as Rushville from the Mental Health and Disabilities Code.

However, Plaintiff is not similarly situated to persons confined for treatment in other state mental health facilities by the simple fact that he is confined in a different facility, a "secure facility" run by the Department of Human Services pursuant to the Illinois Sexually Violent Persons Act.  Additionally, the alleged differential treatment is rationally related to the nature of Plaintiff's disorder.  A state judge has found

probable cause that Plaintiff is a sexually violent person, "convicted of a sexually violent offense, . . .[and] dangerous because [he] . . . suffers from a mental disorder that makes it substantially probable that . . . he will engage in acts of sexual violence."  725 ILCS 207/5(f); *see* Thielman, 282 F.3d at 483 (7th Cir. 2002)("[I]t is not unreasonable for the State to believe that a person with a mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who nonetheless threatens danger to himself or others."); *see also* Varner v. Monohan, 460 F.3d 861, 865 (7th Cir. 2006)(no equal protection violation for different commitment procedures for sexually dangerous persons versus sexually violent persons: "the rationality of the distinction is evident. . . . The difference between those with a criminal record and those without is vital."); In re Detention of Samuelson, 189 Ill.2d 548 (2000)(differences between SVP Act and Mental Health and Developmental Disabilities Code do not violate equal protection).

Plaintiff also presses a claim under the Rehabilitation Act, arguing that the absence of vocational and educational opportunities is

discriminatory.  He contends that Rushville must offer educational

programs beyond the G.E.D. level.  He appears to argue that Rushville

must offer the same educational and vocational opportunities offered at

any other type of state facility, such as the IDOC and mental health

institutions.  He seeks an order that Rushville be required to provide the

same services and programs he alleges are currently offered by the Illinois

State Board of Education, Division of Career and Technical Education.

(Pl.'s Amended Complaint, ¶ 149, d/e 88-2.)  He objects to Defendant

Phillips' denial of Plaintiff's request to enroll in a home study course for

which a personal computer was needed to conduct research.

Judge Baker has previously ruled that Plaintiff has no claim under

either the Americans with Disabilities Act or the Rehabilitation Act.

(8/31/11 Court Order, d/e 66, pp. 2-3, referring to both Acts.)  These

Acts are analyzed identically in the context of this suit.  Jaros v. IDOC,

684 F.3d 667, 671-72 (7th Cir. 2012).  This Court agrees with Judge

Baker's conclusion.  Plaintiff argues that Rushville must provide the same

educational offerings of other state agencies, but the Rehabilitation Act

does not require all state agencies to provide the same services.  The focus

here is on the programs and activities offered by the Rushville Treatment

and Detention Center, not the programs and activities offered by all state

agencies.   29 U.S.C. § 794(b)(1)(A)(defining "program or activity" as

the operations of a State "department, agency, special purpose district, or

other instrumentality of a State or local government").  Plaintiff is not

being discriminated against because of his mental disorder:  All the

Rushville residents are offered the same educational and vocational

opportunities.

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is granted (d/e 80).

2)  The clerk of the court is directed to enter judgment in favor of

Defendants and against Plaintiff.  All pending motions are denied as

moot, and this case is terminated, with the parties to bear their own

costs.  All deadlines and settings on the Court's calendar are vacated.

3) If Plaintiff wishes to appeal this judgment, he must file a notice

of appeal with this Court within 30 days of the entry of judgment.  Fed.

21

R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis

should identify the issues Plaintiff will present on appeal.  See Fed. R.

App. P. 24(a)(1)(c).

ENTERED: September 26, 2012

FOR THE COURT:

<u>s/Sue E. Myerscough</u>

SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE
